Good morning, Your Honors, and may it please the Court. Kate Taylor, Assistant Federal Defender on behalf of Shirahn Gilbert. I would like to spend my time today talking about the cocaine isomer overbreath argument. Me too. I'm going to jump right in if you don't mind. Absolutely, Judge. Assume for the moment that I think that the controlled substance element of 893.13 is a divisible element. Just assume that for the moment. I know you dispute that, but assume that. I believe our precedent all but says it, but assume that I believe that to be the case. If that is the case, what then do we do with the definition of controlled substance under federal and Florida law? Assuming that the definition is divisible by drug type, meaning between heroin versus cocaine, for example. Between whatever's in the federal schedule and whatever's in the state schedule, but sure. Yes, Your Honor. Assuming it is divisible by drug type, I think the plain text of 924E2 supplies the federal definition, which requires that it be a controlled substance as defined in Section 802. I agree with that. And so then we would need or the government would need to prove that there is a categorical match between the definition of the drug in this instance, most most relevant in this case, cocaine. Do we use Shepherd documents to make that call? At least as the law exists right now, I think that's likely. I think the court can look to Shepherd documents to determine whether the drug is cocaine. I don't think it can look further because I don't believe cocaine is further divisible into types of isomer. Well, well, let's talk about that in a second. But but I want to explore the Shepherd. So you agree that we look at Shepherd documents. What did the Shepherd documents say that the substance was in the three or four relevant underlying convictions here? The Shepherd documents show a conviction under 893.13.1A1 for cocaine. But so I agree. As I understand the definition in Florida law, Florida law defines the term controlled substance in in Chapter 893, correct? 893.2 or a one or something like that. 893.03. We were off by one. Okay. What is the relevant sort of paragraph that we're talking about in 893.03 as part of the definition of controlled substance? So 893.03.2A4 defines cocaine and it defines cocaine. So that's I want to back up a little bit. I know sometimes and I don't blame you. There are case law says this too. But when you say defines cocaine, there's no definition of cocaine, is there? I think this is arguably a definition because I'm looking right where you just pointed me to. I have it right in front of me. Can you show me where it says cocaine in quotes means or cocaine is? I think it's incorporated by cross-reference by defining what controlled substance means. Well, the whole thing is controlled substance. In other words, the way I understand. So I'm looking at 893.03. I have it right in front of me just as you know it. And it says it's the same way in federal. It has this is controlled substance. And then it's just a list and it's schedule one and schedule two and schedule three. And it's just an endless, endless list of various chemical components, right? Yes, I think that's fair. Okay. And so for at some point it gets to cocaine, right? Yes. And what does it say with regard to cocaine? Cocaine or I don't know how to pronounce it, but egococaine, including any of their stereoisomers and any salt compound derivative or preparation thereof, essentially. And so my position... It says cocaine or egonine, comma, including any of their stereoisomers, comma, and any salt compound derivative or preparation of cocaine or egonine, comma, except that those substances shall not be included, ibuprofen 1, 1, 2, 3. And that's the current definition? Right. I don't... I think that it that has changed as it's relevant to ioflupine, not as relevant to the rest of... Right. I've looked all the way back to when these were and I... Yes. What we're talking... The port we're talking about is exactly the same in the Florida schedule, right? Yes, absolutely. So when it says cocaine in the Shepard documents, why is that not just the first thing that's listed there in in schedule 2, so subsection 2, a letter 4? Because cocaine is not further divisible by drug type... I'm sorry. If we're conceding... If we're assuming for purposes of this conversation that the schedule, that the statute is divisible by drug type... We are assuming that for this conversation. I do not believe that those drug types, for example, cocaine, are further divisible into their, for example, isomers, salts, precursors. I guess I'm... I guess I know you're saying that, but that doesn't seem to be consistent there. In other words, if the definition of controlled substance is cocaine, agononine, stereoisomers of those things, salts, compounds, derivatives, and preparations of those things, why would the Shepard document not tell me that the substance that the defendant is charged with is either cocaine, agononine, a stereoisomer of either of those things, a salt of either of those things, a compound of either of those things, a derivative of either of those things? I think the preliminary question then would have to be, is it further divisible at that stage, A2, A4? Don't we know for a fact it is? It lists it. In other words, like, I know this structurally, and this may be part of the argument, but let's just say, for example, the statute was four, cocaine, five, agononine, six, stereoisomers of those two things, seven, any salts of those two things, eight, compounds of those two things, nine, derivatives of those two things, and ten, preparations of those two things. Wouldn't we know for a fact that if the defendant in the underlying case possessed or sold or trafficked in one of those things, they would be charged with the preparation, the salt, the derivative, the stereoisomer, as opposed to just cocaine? I don't think so, Your Honor. Tell me why would that not be the case? Because the court first has to engage in a divisibility analysis. And when we're looking at what is divisible, for purposes of this conversation, we're looking at Florida Statute 893.13, 2A4. And so the court would first have to conclude that 2A4 is further divisible into cocaine and everything else that follows. Why is that the case? Again, I thought we started, and again, we're operating under assumption, I know you don't concede this, but if we're operating under the assumption that controlled substance, which is the element, is the divisible by drug type, and in the schedule it lists as a drug type separately, cocaine, eganonine, the stereoisomers of those things, the compounds of those things, the salts of those things, the derivative of those things, and the preparation of those things, then that is the type that would be in the Shepherd documents that tells us what the match has to be, does it not? I respectfully disagree. Tell me why. In part because I don't believe 2A4 is further divisible. But further, if we look at, and this is not an argument that was pressed by the government either below or in this appeal, and so there's no briefing, I haven't had the opportunity to brief this exact question, but I am not aware of anything emanating from state law that would suggest this is further divisible, that state law charges the specific subcomponents of 2A4. Well, it's not subcomponents, it's just, well, let's put eganonine. I mean, eganonine would be separately in there, right? I'm not sure that that's correct. Do you think when it says cocaine, it has to mean every single one of those things? Yes. I do think based on... Where do you get, I just don't get, where as a matter of text and structure of 893.03 are you getting that statement? So 893.03 is broken down into different schedules. And what we're looking at specifically is 2A4, is one paragraph that lists all of these different cocaine and related chemical molecules or chemical components. And so the court cannot just assume that this paragraph, this subsection of the statute is further divisible. I think the government would bear the burden. Well, I'm just looking at the text. I mean, that's all you've ever asked us to do is just, hey, look at the text. Stereoisomers are different than these things and that's not a match. I'm just doing the same thing by looking at the text and seeing that there are at least five or six separate things that are listed here. And we know from the Shepard documents, which one he actually was charged with. So I don't think we do know that based on the Shepard documents, because I don't believe there's any authority. And I don't believe the government has argued this at any point for the idea that the state courts would charge each specific thing. I thought we don't have to rely just on the state courts for the reasonable probability test. Can't we, haven't we said, and can't we just rely on the text of the statute but see whether there's a reasonable probability of how something is charged? We don't get to reasonable probability unless this is divisible. So I don't think that there is any showing on this record based on what the government has submitted. Based on my understanding of state law, I don't believe there's any authority for the idea that they specifically charge as separate elements and therefore rendering it divisible. I think they are means at that point. And under Mathis and this court's interpretations of Mathis, it would not be further divisible by cocaine and its other... I don't think we understand your... Can I ask one other? I apologize. And I have a couple of questions. Yeah, I'm sorry for taking your time. So don't, I appreciate you helping me out here. So I want it separately. Yes, Your Honor. I want to talk about lanes. Yes. So I know the argument is lanes is under plain error. Yes. But there are different ways to approach plain error. And lanes seems to suggest that as to this very argument, as to the Isomer argument, which was brought up there, that Smith held, and we have previously held, that 893.13 covers, that 893.13 is a serious drug offense, period. And that nothing in our case law has abrogated or has been contrary to that. Um, why is that not, even under the plain error framework in which it was decided, not a holding directly on point for the issue that is being raised in front of us? I think because lanes was reviewing for plain error only, its holding is limited to that. And so it held that, that Mr. Lanes could not establish, based on this court's prior precedent, that the error was plain. What if, so let's take a different plain error case. Let's say there's an unpreserved issue and it's plain error, and the court writes in a holding, or in a case, we review for plain error, here there was no error at all, because under a prior precedent, we have held X. Would that not be a holding for what, whether there was error for X? I don't think that would automatically establish that there could never be error based on a preserved claim. I think the records are very different. In lanes there, because it was plain error, there was nothing in the record to establish that the plain text was a meaningful difference between sterilized and merged. I will say, I'm interested in rebuttal if you can come up with a case where we've said that because it was under plain error, even where we decide something on the error prong, that that cannot be precedent where there's a preserved case. I just don't know that that precedent exists. And I think we have lots of examples where we have applied plain error in that context. But let me have you on rebuttal do that. I want to, I know other folks want to ask questions too. Yes, Your Honor. While you were answering Judge Lux's questions, you said the government bears the burden. Explain to me what you're talking about and how that works. Yes, Your Honor. So I think it starts from, I apologize, from the first principles that for a sentencing enhancement like the ACCA, the government bears the burden of establishing that this individual is subject to that enhancement and therefore that he has three or more predicates. In a case like this, following Chamu and Said, the way that analysis looks here is that if there is a meaningful divergence based on the plain text of the statute, here stereoisomers versus optical and geometric, and that that's meaningful, which is established here based on the unrebutted expert declaration, the government would need to, in order to carry its burden below, essentially disprove that. And so I think on this record, the court doesn't have to reach the specifics of what the burden looks like, because even if we bore some burden under the realistic probability standard, we met that below. And so, but I think as a bigger picture, as the court is looking at this and perhaps other cases where the government does attempt to meet its burden below, I think there is strong support emanating from Chamu, from Said, and I think... Well, what about cases like Oliver, where we seem to have placed the burden on the defendant? So I think there's some... The ultimate burden is on the government, and proving that these are categorical matches, that these are ACCA predicates, which is under the categorical approach, they must be categorical matches. So I think that is undisputed, that the government bears that ultimate burden. I think there is authority in this circuit that the defense bears some burden of showing realistic probability, but what I think this court has developed looking at these types of cases, and Judge Rosenbaum kind of explores this in the Lane's dissent, that once that burden has been met, in this instance, I think the burden by the defense is met when we can show there is a plain statutory mismatch, and that that mismatch is meaningful. It's not just text, as Chamu and Said kind of refer to. Once we have met, that is us satisfying our burden under the realistic probability standard, and at that point, if the government doesn't present anything further, they fail their ultimate burden of establishing that these ACCA predicates, or that these prior offenses are in fact ACCA predicates. And so in that instance, the court needs to go no further based on this record. I think if the court is reluctant to announce a categorical rule in this case, it can have a more limited holding, which is that in this case, the government failed to meet its burden to establish that Mr. Gilbert's prior convictions are categorical matches, and therefore it can remand for resentencing without the ACCA enhancement, but I think the ultimate burden, our position is that the ultimate burden is on the government, and once we meet our burden under realistic probability, the government must rebut that, and they failed to do that here, it's a preserved error, and so at a minimum, even if the court isn't prepared to announce a categorical rule about Florida cocaine-related prior convictions, at a minimum, it should find that Mr. Gilbert was not shown, the government failed to show that Mr. Gilbert should receive the ACCA enhancement. So in this case, your position is you've shown a statutory mismatch because of the definition if we don't accept Judge Luck's argument, and then it would be the government's burden to come back and say that stereoisomer doesn't exist, or something to that effect. That's exactly right, and I think it's particularly strong in this case where we have an unrebutted expert declaration that specifically says that stereoisomers of cocaine exist that are neither geometric nor optical, and so even if, I'm not sure that that's always required, given how the burdens should ultimately rest on the government, but in this case, it doesn't affect the outcome because we do have that in the record, it's unrebutted, and so regardless of the burden, the government failed here. One more question about Shepard documents, and then I'll let you go, and I'll give you your full time back for rebuttal. Do you agree that for purposes of the Erlinger error that you've argued, we can look to Shepard documents to see when the crimes occurred? So I think post Edwards, it's a harder argument to make that the court cannot. I think there are, and I briefed this already, so I don't want to belabor the point, I think there are meaningful distinctions between Edwards in this case in terms of objections that were made. However, if the court is to look at Shepard documents, I think it is limited to the Shepard documents that were actually introduced into the record, and so we do dispute that these additional documents that are referenced but were never filed, that those are part of the record. So if the court looks at the Shepard documents that are actually in the record, those are the ones that were attached to the government's response to the PSI objections, and those are, save one, only judgments. And so they contain no information even about the dates of the offenses, let alone the other circumstances like location and other circumstances that the court is to look to in terms of the different occasions. Let me ask you a question. You never raised an objection about the different occasions at sentencing. What you did say is you objected to the act enhancement as to whether Gilbert's convictions qualified as serious drug offenses, but you never raised an objection about the different occasions requirement. That's true, Your Honor, yes. In this case, the sentencing was back in 2020, I think before Wooden and before Erlinger. So no, you're absolutely correct. And I think based on this court's precedent, assuming it doesn't find this error to be jurisdictional, which it has not yet directly ruled, and it has, we recognize in Rivers, acknowledge that it's not structural. Assuming that plain error does apply, I think the documents that the court can look to are more restricted than what it looked to in Edwards. And that's where I think the objections matter because we specifically objected to the facts contained in paragraphs 32, 34, 39, 40, and 42. And I think under McLeod, that is sufficient to make those paragraphs not deemed admitted so that the court on appeal cannot rely on those paragraphs to establish those facts. And so I think the court would be limited to considering the Shepard documents that were actually filed by the government in response to the PSI objections. But I acknowledge that this is not preserved. But wouldn't it be your burden to prove a reasonable probability that a jury would not have found his prior convictions were committed on different occasions? I mean, on rebuttal or now if it's okay, what would be your argument to establish this given that multiple offenses are separated by years and intervening arrests? So I think under Edwards, yes, I agree with your honor's articulation of how the burden looks on plain error. But I think what the court can look to in determining whether a jury could, whether there's a reasonable probability that a jury would not have found this, would not have found that they were on separate occasions, is restricted to the documents, those Shepard documents we're talking about. And they don't have any information about when the offenses were committed. They don't have any information about the circumstances other than what crime it was, essentially. And so I think based on the record, we can demonstrate a reasonable probability that a jury would not have made that finding because what the court can rely on in the record is so limited. It doesn't allow a jury to make that conclusion because it's just the judgments and one information. And so it doesn't have enough facts in this record. And so even under plain error, I think we can meet that burden. And of course, because Mr. Gilbert was sentenced to 15 years, which is above the otherwise applicable statutory maximum, which at this point in time would have been 10 years, that establishes prejudice to him under prongs three and four. Thank you, counsel. Thank you, your honors. Good morning. Alexandra Bailey on behalf of the United States. I'd like to maybe just start where we left off on what the court can consider in conducting the plain error analysis. And in this court's case... I'd much rather you start with the isomer issue. Of course, we can start there. I think it's the most difficult issue that we need to decide.  So if you could start where I started with your opposing counsel. First, is it the government's position that the controlled substance element is divisible by drug type? So the government did not contend that the statute was divisible by individual drug type. That question was reserved by the court in Jackson, whether within the cocaine ecognine subdivision, it's further divisible. But we don't think that it needs to be further divisible for this court to find that. Well, I'm asking first... That's not the question I asked you. I asked is the controlled substance element itself in 893.13 divisible? Isn't that the government's position? Yes, 8903 is divisible by... 893.13 is divisible. Yes, by drug type, which are in the schedules and they list drug type. And drug type is a part of the offense. Okay, and we can look at the Shepard documents to determine the drug type, correct? That's correct. When you look at the Shepard documents here, what do they tell us about the drug type? That was the issue. That Mr. Gilbert was charged with possession with intent to distribute cocaine. Okay, so we know it's cocaine, right? Correct. And we know cocaine is in the federal schedule, right? Correct. So the only question I think that I have is, does the schedule list things out as cocaine or agonamine or something like that? I have no idea how to pronounce it. The stereoisomers, the derivatives, the salts, the compounds, are those separate things as I read the statute? And I'm just talking as a matter of law here. This is a matter of getting the law right. This isn't about realistic probability or anything else. This is simply about how do I read this statute? Are these separate things or are they all the same thing? I think just as a matter of pure statutory interpretation, each listed drug, it's a different controlled substance and part of the offense. So cocaine is different than ecognine, which is listed, and then isomers are derivatives, things like isopropane. Yes, you know, as a matter of fact, it's different, right? Because there's evidence in the record that tells us that there's a difference between this stereoisomer and that stereoisomer. They are inherently different, right? Right. So if we know that they're different and we know that the statute lists these things, as different things, then why, when the state decides to charge one of them, is that, do we not look to see if that is a match with something in the federal schedule? Assuming divisibility, right? Assuming divisibility, I think that's exactly right. We can say that cocaine is criminalized under federal law and cocaine is criminalized under Florida law. So there's no mismatch. And I think this court has not in Chamu and then in Jackson, this court has looked at both of these definitions and has not said on the face of this statute, there's some sort of obvious textual overbreath. And I think that's telling. And what this court said in Chamu is that difference in wording is not enough. There has to be some legal significance to that difference. And so there is a burden for the litigant claiming overbreath to show that there's some meaningful legal consequence associated with different wording. And here there is none. And so all we have in the record is an expert letter that like in Chamu is purely theoretical. It talks about isomers broadly. It says that there are non-optical, non-geometric isomers of cocaine, but does not talk about whether those are substances that someone can possess and possess in quantities that would be prosecutable under Florida law, which is what in Chamu, this court said would have been needed to start to address the burden to show a realistic probability. That gets to the realistic probability element of this. That's separate from what I was talking about with your opposing counsel. That was similar to what Judge Pryor was talking about with your opposing counsel. But let's get to that. So what is the burden? Your opposing counsel saying, as long as I can show a theoretical possibility of a difference between these two things, that's a realistic probability. And then it shifts to the government. Is that what we said in Oliver and the cases that have followed it, which have said that the defendant must show a realistic probability of actually being prosecuted? That's not what this court has said. So there's a difference between the burden to show that ACCA applies and how we apply the categorical approach. And this court has always applied the categorical approach in a way that requires that the litigant claiming over breadth needs to show that there is, they cannot just point to a theoretical possibility of over broad enforcement. They have to show a realistic possibility. And so that is not limited to the immigration context. And in Danawa footnote three, this court said that the way the categorical approach applies in the immigration context and in the ACCA context is analogous. And so even though Chambu was an immigration case, we see that it's articulation of the burden under the categorical approach applies the same in this case. So is it enough to show that there's a molecule that in theory could exist separate and apart from what we understand cocaine to be? Or must you show that there's a realistic probability that someone is actually going to be prosecuted for that molecule? It's not enough to just say that in theory, science recognizes there may be a molecule outside of the federal definition. In Chambu, the court said that the declaration never got beyond the theoretical because it did not say that that was a substance that could be possessed, isolated and possessed and possessed in quantities that it would be prosecutable under Florida law. Can I ask you about lanes? Yes. So as I understood your opposing counsel's argument, what she said was because it's plain error, that is sort of inherently distinguishing from a case where there's a preserved error where something is decided. Is that your understanding of our prior final precedent rule and precedent? Do we not apply precedent for unpreserved errors under plain error, even where we've sort of reached the error prong when that same issue comes up in the preserved context? Whereas here the court has made a statement about the actual error and not just said that this fails under plain error they haven't pointed to another precedent. We do think that that has precedential value. And even more clearly here, beyond the Smith cases in Jackson, this court said that while the Smith cases addressed the mens rea element of the accuserious drug offense definition, the Jackson case went on to address the controlled substance element. So the exact element that we're dealing with here under the same statute and for the same drug. And so even stronger would be this court's precedent in Jackson to foreclose their argument under the prior panel precedent rule because the stereoisomer argument they raised here would be an overlooked or overlooked reason why the Florida statute may have been overbroad. I'm not sure that you can read Jackson, especially its discussion of sort of what is an overlooked argument or not. I mean, there we sort of distinguish the IO Plouffe lane as separate and apart from the underlying issue. I'm just not sure that I'm not sure that's a winner for you, but I just don't know how to read lanes any differently to say that we've already held that this statute is a serious drug offense, rather correctly or incorrectly in the context of the exact argument that we brought here and then said that we haven't abrogated or decided contrary to that. I mean, I just don't know what to do with that precedent. I'd agree. And I think the dissent in lanes raised that very issue. They said the majority says that this is controlled by Smith and took issue with that, but that did not persuade the majority. The majority said this court has decided that this is a serious drug offense. I think that that can't easily be done away with. And even aside from those in Chamu, the court again addressed these very statutes and said that there's not meaningful textual overbreath on the face of these two statutes, just based on the different words. And so there is nothing more done here than was done by the petitioner in Chamu. And so the outcome should be the same. What do we do with this language in the Supreme Court's decision in Pareto, where the court said, well, the ACCA's categorical approach demands certainty from the government. The INA's categorical approach demands it from the non-citizen. Right, so I... Doesn't that suggest that the burden is different in those two instances? Yes. So in the first instance, the government has the burden to show that a statute is a categorical match for the federal equivalent. But the court wasn't writing on a blank slate here. This court had repeatedly held that this was a serious drug offense. And it doesn't alleviate the burden. The issue that courts have always found with the categorical approach is this theoretical imagination about what could possibly have been criminalized under the state statute. And so in order to prevent the categorical approach from getting even more abstract than it may already be, this court has always required litigants claiming overbreath to bear some burden in showing that the thing that they raise is actually possible. And so we can imagine why that's an issue. We have litigants claiming there's all sorts of potential scientific molecules that may fall outside of the definition. And so if we don't have some burden to prove that there's actually a chance that Florida would criminalize that conduct, the opposite would be the government has to disprove the existence of any possible isomer outside of what's criminalized under the federal statute. And I'd also just like to point to the fact that here we really have what is a quite easy case because the eight molecules identified by their expert below are the very eight molecules of cocaine, including naturally occurring cocaine and its mirror image isomer that this court has said since the 80s are the optical and geometrical isomers of cocaine that Congress was trying to close the loophole on the isomer defense when it enacted the amendment to the CSA to include optical and geometric isomers of cocaine. So even if in some case someone raises something that is outside of the class of isomers that we know are covered and there is more of a question there, this is not that case because we know that these very eight isomers are criminalized by federal law because accepting their declaration as true would mean that naturally occurring cocaine is not criminalized under the federal schedules. So I think it's clear here that nothing more has been done than was done in Chamu. And it's also worth noting that while the appellant submitted this letter in reply at sentencing, they never raised this issue with the district court. The district court tried to elicit objections and they said that the objections are just there for preservation. Binding 11th Circuit precedent for closes is against our arguments. And so to the extent that there's any lack of a record on the scientific certainty of their declaration, it's because at sentencing, this was never raised when the district court tried to elicit objections. And if there are no further questions, let me just go back for one minute. And I want to make sure I understand your argument. It sounds like you're saying that the government has the initial burden to establish by looking at the statutory language or what have you, maybe state law decisions that the state and the federal statute are the same, right? Basically the same in substance. Yes. And then the disagreement is over. Once that is done, who has the burden to show that there's a realistic probability of prosecution under the statute? Is that your argument? I think that's right. And it assumes that someone is claiming that the statute will be applied in a theoretical manner that is not obvious on the face of the statute. And I think in Syed, this court distinguished Chamu because it said on the face of the marijuana statute, we see that it excludes the mature, the stocks of the marijuana plant. So we don't have to guess whether that exists because I believe it was federal law specifically excluded that thing. And so that was different than in Chamu. It distinguished Chamu and said, that's different than what we have here, which is not that we know that there is something captured by stereoisomer that is not captured by the optical and geometric isomer definition. And so we need more. There isn't a, on the face of the statute, there's not any legal significance to the different wording. You might wanna, I stopped you when you started with the plain error Erlinger issue. You might wanna loop back to that with the time you have. Yeah, just briefly in Bennett, this court said that while an objection to a paragraph in the PSI as being based on arrest reports prevents reliance on that specific paragraph, it does not prevent reliance on that information. It is then in the record supported by other Shepard's documents. And in that case, the Shepard's documents that supported the information- Are we limited to the Shepard documents? I- So we can look at the Shepard documents. I'm pretty sure that's, we all sort of agree with that. Can we look beyond them? You can also look, really on plain error review, this court can look at any reliable information in the record, including admitted facts and in the addendum, probation recounted the information that is in the Shepard's documents, the date of the offenses that Mr. Gilbert was charged by information, the case numbers, when he was convicted, that he pled guilty. And also included the arrest forms, correct? Weren't the arrest forms attached to the PSI, the addendum that the probation officer- They were in the packet of documents as well. And don't those set out co-conspirators, purchasers, locations, states, things like that? That's correct. And so to the extent that that information is recounted elsewhere, and Mr. Gilbert had these documents and then never objected to the accuracy of the information, never objected to reliance on the charging documents or on judgments. And in fact, in his original objection, said the court can rely on things like judgments and charging documents. And so under Bennett, we can still look to that information. This court doesn't have to decide whether the extra documents are per se in the record because the information is elsewhere and supported by reliable information, which Mr. Gilbert did not object to. And so it's admitted for these purposes. And so for those reasons, we'd ask that this court affirm the sentence. Thank you, counsel. Rebuttal? Yes, Your Honor. So I want to, and I do, I will, of course, address Judge Luck's question about plain error. But I just want to start with a couple of, I think, incorrect statements that the government's making about the record as it relates to realistic probability. This is very different from Chamu. In Chamu, there was no, nothing in the record to establish that cocaine had any stereoisomers that were neither geometric nor optical. Here, and that's why Chamu said that that was a theoretic possibility. I know, but counsel, the question is whether, you're clearly right about what you're saying about the record. But the question is, do you have to do more than that as part of your burden? In other words, do you have to show just that there is this molecule that exists somewhere out there in the world? Or do you have to show that that is actually something that exists that is chargeable or that Florida cares about or that is something that people snort up their nose? I mean, do you have to show something beyond its existence? So I think the something, so to start, I think we do show that this is not theoretical, that this exists in the real world because the expert clearly says that it exists as to cocaine. And so the question or what Chamu found insufficient has been met here. What they're asking for, we supplied. Said is more instructive on this because in Said, they said we look at the plain text of the statute and this court's precedent and reaffirmed by the Supreme Court in Taylor shows that when it is plain on the face of the statute, is sufficient. You don't have to show a prosecution. And there they looked and they said, this covers all parts of the marijuana plan. I know, but Chamu, we said there was no reasonable, realistic probability when having the statute and an absence of any record. I mean, I don't know that we can say that the Chamu court didn't look at the statute and not make a call that somehow statutorily that there wasn't a mismatch there. So I think Chamu says, we think that there is a mismatch in the sense that there are, there exist stereoisomers that are not geometric or optical for some substances. But what was missing is whether cocaine has any stereoisomers that are not geometric or optical. Right, it's a record issue, not a statute issue. I think that's right because they find the problem. So we know, so you've proven they exist. And I guess the question is, is there a burden beyond that just to say, yes, chemically, there are these things that are one and not the other. I don't think so. And I think that flows from Chamu itself and in particular, Saeed's interpretation of Chamu. Because Saeed was talking about, you don't need to show a sample prosecution for mature stocks of the marijuana plant because we can see that mismatch on the plain text of the statute. And we know that that exists, not that people are prosecuted for it, but that mature stocks of the marijuana plant exists. And that's exactly what we have here. We have the statutory mismatch and we have an expert that's unrebutted. The government did not question this in any way that says these exist for cocaine. I just don't see how Chamu would have came out as it did if it just relied on what you're saying is a statutory mismatch. It asked for and called for something else. There, the record didn't have it. Here, we have something different. There's no doubt about that. And I guess, is there a burden a little bit beyond that reading Oliver and some of our cases that have followed it, which seem to ask for something beyond where there's no statutory mismatch like there was in Saeed, where to see if there is an actual prosecution or a realistic probability that a case is going to be brought based on isomer X that isn't included in the federal schedule? I don't think so because I think this falls within what Saeed is talking about. I also think when we look at this court's analysis, its articulation of what is required in both Chamu and Saeed, we look at the Supreme Court's instruction in Taylor, which talks about why it is particularly inappropriate to, or it's particularly difficult and unworkable to require this example of a case, especially when it's not necessary, when the plain text is... Taylor's so different though, because Taylor specifically says the realistic probability approach just doesn't apply here because we're talking about a federal to federal match and not between a state. In other words, there isn't the same comedy concerns which require that you show an actual ability. So Taylor talks, it certainly talks about federalism concerns, but it also talks, that's only one of the reason it gives. And I think that when we have, admittedly, it's a state statute, but there is no greater way to honor federalism and comedy than to follow the plain text of the state court statute. And so I think it would be entirely consistent with Taylor, entirely consistent with Eason, entirely consistent with Said and Chamu. And at the end of the day, the burden is on the government. They didn't attempt to meet the burden. They didn't argue realistic probability in the district court or on appeal even. So I think arguably they've waived and abandoned that issue. In terms of plain error, I see I'm running out of time, but to circle back to your question, Judge Luck, if I may, I think that Jackson is instructive on this question of what a case can hold. And so I think in lanes, the court is very clear that what it's holding is, it says it's at the top of that section of the opinion. It repeatedly says what it is holding, which is that lanes cannot meet his burden because he bore the burden in that instance as the appellant trying to show plain error that he could not meet his burden of showing that any error was plain. I don't think it goes any more beyond that. And certainly when we look at the court's analysis in Jackson too, or I should say the current Jackson opinion, not the earlier vacated one, that it is not every single, that it's limited to the issue. The holding is that which is necessary to its result. And right after the portion you're talking about, the portion which says lanes cannot satisfy that standard, period, next sentence, we have held that a conviction under section 893.13.1, the statute at issue here, qualifies as a serious drug offense under the Armed Career Criminal Act. Lanes has identified no decision overruling or abrogating these precedents. That is not the necessary reasoning for the holding? I don't think so because the last part of that sentence is he cannot establish that it is obvious or clear error under current law that the district court erred. So I think that that is what is cabining the earlier sentence. And so lanes, while it certainly did reject Mr. Lanes's argument, it's not only a different record, but it is limited to plain error. I understand your argument. Thank you, Your Honors. And if there are no further questions, we would ask that the court vacate Mr. Gilbert's ACCA enhanced sentence for man for resentencing without the ACCA. Thank you. Thank you.